# Illinois Official Reports

## Appellate Court

---

### *People v. Curry*, 2018 IL App (1st) 153635

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEONTAE CURRY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-3635 |
| Filed | May 22, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-10019; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Pamela Rubeo, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    Deontae Curry acted as the getaway driver, while some of his associates robbed a video game store and used pepper spray to incapacitate the store clerk. Curry was convicted of armed robbery (on an accountability theory) and sentenced to 12 years of imprisonment.

¶ 2    At a posttrial hearing, Curry's counsel told the trial court that Curry alleged that counsel was ineffective for failing to move to suppress Curry's statement to police based on *Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court did not ask any further questions of Curry or his counsel to discern the claim's factual basis, so we remand for an adequate preliminary inquiry. We reject, however, Curry's request for a new sentencing hearing on the grounds that he was guilty of robbery, but not armed robbery, because we find that the pepper spray used on the store clerk was a "dangerous weapon."

### BACKGROUND

¶ 3

¶ 4    As Alonzo Mitchell worked behind the counter at a Game Stop store, three men entered wearing hooded sweatshirts. One man approached the counter and sprayed Mitchell with pepper spray, another man went behind the counter and tackled Mitchell, and the first man sprayed Mitchell again. The men took Mitchell's store keys and stole several video game systems.

¶ 5    Meanwhile, a coworker who had been hiding in the store's break room called police. A nearby police officer heard the radio call and saw individuals come out of the store and get into a silver Pontiac. The officer pursued the Pontiac, which was later found unoccupied and parked on a residential street. The backseat and trunk of the Pontiac contained several video game systems, as well as Mitchell's store keys. On the sidewalk nearby lay a hooded sweatshirt and a can of pepper spray. The car's registration revealed that a woman owned the car; she gave police the name of a potential suspect, Terry Johnson.

¶ 6    Johnson told police that he and some friends robbed the Game Stop store while Deontae Curry acted as getaway driver in the silver Pontiac. Curry told police that his friends had planned only to shoplift while he waited in the car.

¶ 7    The trial court found Curry guilty (under an accountability theory) of armed robbery, with the pepper spray being a "dangerous weapon." Curry's counsel then filed a motion for a new trial. During argument, counsel mentioned that Curry wanted to raise a claim of ineffective assistance of counsel: "There was not a motion to suppress and my client wishes to state that it was an error for—to fail to file a motion with respect to that statement." The trial court asked, "Based on what?" Counsel responded, "Based on *Miranda versus Arizona*." The trial court asked no other questions about the issue, either to Curry or his counsel, found credible the police officer's testimony that Curry had been advised of his rights before making a statement, and stated that it would not have ruled differently if a motion had been filed. Curry received a prison sentence of 12 years.

### ANALYSIS

¶ 8

¶ 9                        Inadequate *Krankel* Inquiry

¶ 10    Curry argues that the trial court erred in its inquiry into his posttrial claim of ineffective assistance under *People v. Krankel*, 102 Ill. 2d 181 (1984). When a defendant makes a claim of

ineffective assistance of counsel, either orally or in writing, the trial court must address the claim so as to potentially limit the issues on appeal. *People v. Willis*, 2016 IL App (1st) 142346, ¶ 17. The trial court's first step involves an inquiry into the factual basis underlying the claim. *People v. Ayres*, 2017 IL 120071, ¶ 11 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)). To accomplish this, the trial court may ask trial counsel about the facts underlying the claim, discuss the claim with the defendant, or base its evaluation on its own knowledge of counsel's trial performance. *People v. Jolly*, 2014 IL 117142, ¶ 30. Whether the trial court conducted an adequate preliminary inquiry presents a question of law we review *de novo*. *Id.* ¶ 28.

¶ 11 Curry's counsel offered an elementary description of the alleged ineffectiveness: failure to move to suppress his statement. The trial court asked just one question as to the basis of the claim, and Curry's counsel named *Miranda* without elaboration. The trial court did not ask any questions underlying the claim before immediately ruling. This falls far short of " 'determin[ing] the factual basis of the claim.' " *Ayres*, 2017 IL 120071, ¶ 11 (quoting *People v. Banks*, 237 Ill. 2d 154, 213 (2010)); *cf. Willis*, 2016 IL App (1st) 142346, ¶ 20 (trial court's inquiry was adequate where it discussed claim with defendant and evaluated claim based on its knowledge of defense counsel's performance and facial insufficiency of claim). The trial court did not ask counsel or Curry whether he was alleging that he had not been given *Miranda* warnings at all, whether the warnings were inadequate, whether he did not understand them, or whether he initially waived but later decided to assert his rights. As perhaps the most well-known case in the history of American criminal jurisprudence, the word "*Miranda*" is totemic to a layman criminal defendant, and its use, without detail, does not yield enough to inform a trial court as to the claim's factual basis. This mystery could have been solved within a few minutes simply by asking counsel or Curry to elaborate. The trial court would then have been able to pursue or reject the claim based on its knowledge of the trial. *Moore*, 207 Ill. 2d at 78 (following adequate preliminary inquiry, *pro se* motion may be denied where claim lacks merit or pertains only to matter of trial strategy).

¶ 12 Under *Krankel* and its progeny, the trial court had a duty to ascertain the bare facts underlying the claim. *Ayres*, 2017 IL 120071, ¶ 11 (trial court must conduct " 'adequate inquiry *** sufficient to determine the factual basis of the claim' " (quoting *Banks*, 237 Ill. 2d at 213)); *People v. Mourning*, 2016 IL App (4th) 140270, ¶ 23 (remanding for *Krankel* inquiry where trial court "did not engage in any questioning to uncover the underlying factual basis of that claim"). The trial court did not do so, and so the case must be remanded for an adequate preliminary inquiry.

¶ 13 Is Pepper Spray a "Dangerous Weapon"?

¶ 14 Curry also argues that he should have been found guilty of robbery, rather than armed robbery, because the pepper spray used on Mitchell was not a "dangerous weapon" within the meaning of the armed robbery statute. See 720 ILCS 5/18-2(a)(1) (West 2014) (person commits armed robbery if he or she commits a robbery and carries, or is otherwise armed with, "a dangerous weapon other than a firearm").

¶ 15 The term is not defined in the armed robbery statute, but is derived from common law. *People v. Hernandez*, 2016 IL 118672, ¶ 12. Curry suggests that we should look to the armed violence statute for a definition of "dangerous weapon," but our supreme court has already rejected that strategy. *Id.* ¶ 16. Contrary to Curry's contention, what constitutes a "dangerous

- 3 -

weapon" presents a question of fact, not law. *People v. Ligon*, 2016 IL 118023, ¶ 21. So we will review the claim under the familiar sufficiency of the evidence standard. See *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (when reviewing sufficiency of evidence, court considers whether, viewing evidence in light most favorable to State, any rational trier of fact could have found essential elements of crime beyond reasonable doubt).

¶ 16 "Dangerous weapon" includes "any object sufficiently susceptible to use in a manner likely to cause serious injury." *Ligon*, 2016 IL 118023, ¶ 21 (citing *People v. Skelton*, 83 Ill. 2d 58, 66 (1980)). This comprises not just objects that are *per se* dangerous, but objects that can be used in a dangerous manner. *Hernandez*, 2016 IL 118672, ¶ 12; see also *People v. Dwyer*, 324 Ill. 363, 365 (1927) (distinguishing between objects "made for the purpose of destroying life" with "the question depends upon the manner of its use").

¶ 17 Pepper spray would not qualify as "*per se* dangerous," as a loaded handgun would. Rather, pepper spray falls into the category of objects that can be used in a dangerous manner, so it is for the trier of fact to determine whether the pepper spray actually was used that way on Alonzo Mitchell. See *People v. Ross*, 229 Ill. 2d 255, 276 (2008) (reviewing cases and concluding that "the trier of fact may make an inference of dangerousness based upon the evidence"). The trial court determined that the pepper spray was used in a dangerous manner, noting that the robbers used it to immobilize Mitchell from the beginning of the robbery. This determination is consistent with precedent finding that the effects of pepper spray are "disabling" and "temporarily incapacitate[ ]" its victims. (Internal quotation marks omitted.) *People v. Lampton*, 385 Ill. App. 3d 507, 514-15 (2008); see also *People v. Elliott*, 299 Ill. App. 3d 766 (1998). That Mitchell did not suffer a long-term injury from the pepper spray is of no moment. See *People v. Brown*, 87 Ill. App. 3d 368, 370-71 (1980) (effects of incapacitating, unidentified spray were temporary, but whether weapon was "dangerous" for resolution by trier of fact). We must defer to the trier of fact on this issue.

¶ 18 We remand this case to the trial court to conduct an adequate preliminary inquiry into Curry's ineffective-assistance claim.

¶ 19 Remanded with directions.